IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| SYLVIA ANN FERGUSON, | ) Civil Action No. 4:09-03310-RMG-TER |
| Plaintiff, | ) |
| v. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| Defendant. | ) |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claim for Disability Insurance Benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

**I. PROCEDURAL HISTORY**

Plaintiff, Sylvia Ann Ferguson, filed an application for DIB on April 24, 2006, with an alleged onset of disability of March 31, 2006. Plaintiff requested a hearing before an administrative law judge (ALJ) after her claim was denied initially and on reconsideration. Plaintiff appeared and testified at a hearing on November 10, 2008, along with G. Roy Sumpter, a vocational expert (VE)

On February 27, 2009, the ALJ issued a decision finding that plaintiff was not disabled. (Tr. 65-73). After the Appeals Council denied plaintiff's request for review of the ALJ's decision,

the ALJ's decision became the Commissioner's final decision for purposes of judicial review under 42 U.S.C. Section 405(g). See 20 C.F.R. § 404.981. Plaintiff filed the instant action on December 23, 2009.

## II. FACTUAL BACKGROUND

Plaintiff was born October 23, 1959, and was forty-nine years of age at the time of the hearing. (Tr. 94). Plaintiff has a high school education plus three years of college. (Id.). Plaintiff worked for more than 25 years as a production worker. (Tr.111). In October 2004, a forklift ran into a platform where plaintiff was standing causing her to fall and land on her knees, shoulders and left neck. (Tr. 299). Initially, plaintiff alleged disability due to knee and left arm pain and carpal tunnel syndrome in her hands.

## III. DISABILITY ANALYSIS

In her brief before the Court, plaintiff argues the following, quoted verbatim:

1. Did the Administrative Law Judge err by not affording treating physician Boyd's medical source statement controlling weight?

2. Did the Administrative Law Judge err by failing to give proper weight to the opinions of Drs. Seastrunk, Kooistra, and Tollison in reaching her conclusions about the claimant's residual functional capacity?

3. Did the Administrative Law Judge err by not considering the effects of the claimant's obesity on her overall residual functional capacity?

4. Did the Administrative Law Judge err in concluding that Dr. Essman's statement that his patient was at maximal medical improvement represented a finding of unimpaired function of her hand?

5. Did the Administrative Law Judge err in finding the claimant not credible based on minimal evidence with unclear meaning?

6. Did the Appeals Council err by not properly evaluating Dr. Margalit's report and the basis for his opinions of the claimant's functional capacity?

(Plaintiff's brief).

In his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since March 31, 2006, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: chondromalacia bilateral knees, bilateral carpal tunnel syndrome (CTS), osteoarthritis, moderate degenerative joint disease knees, obesity and depression (20 CFR 404.1521 *et seq*.).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift 20 pounds occasionally and ten pounds frequently, stand/walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday. The claimant has limited use of her right dominant arm for overhead reaching, as well as reaching in all directions. She can occasionally climb ladders, ropes or scaffolds, and occasionally kneel, crouch or craw[l]. The claimant would need simple instructions.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on October 23, 1959 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 31, 2006, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 67-73).

Under the Social Security Act (the Act), 42 U.S.C. § 405(g), this Court's scope of review of the Commissioner's final decision is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether he applied the correct law. Richardson v. Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). "Substantial evidence" is that evidence which "'a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. at 401 (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's narrow scope of review does not encompass a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. See 20 C.F.R. § 404.1520. An ALJ must consider whether: (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant has an impairment which equals a condition contained in the Act's listing of impairments (codified at 20 C.F.R. Part 404, Subpart P,

4

Appendix 1); (4) the claimant has an impairment which prevents past relevant work; and (5) the claimant's impairments prevent him from any substantial gainful employment.  If an individual is found not disabled at any step, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a)(4); Hall v. Harris, 658 F.2d 260 (4th Cir. 1981).  An ALJ's factual determinations must be upheld if supported by substantial evidence and if proper legal standards were applied.  Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

Under 42 U.S.C. Section 423(d)(5), the plaintiff has the burden of proving disability, which is defined by Section 423(d)(1)(A) as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  See also 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

### III. ARGUMENTS

Physicians' Opinions

Plaintiff argues that the ALJ erred by not affording treating physician Boyd's medical source statement controlling weight, and did not give proper weight to the opinions of Drs. Seastrunk, Kooistra, and Tollison in reaching her conclusions about the claimant's residual functional capacity. (Plaintiff's brief).

Defendant contends otherwise and argues that substantial evidence supports the determination that plaintiff was not disabled.

Although the regulations require that all medical opinions in a case be considered, 20 C.F.R. § 404.1527(b), treating physician opinions are accorded special status, see 20 C.F.R. § 404.1527(d)(2). "Courts typically 'accord greater weight to the testimony of a treating physician

5

because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant.'" Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006) (quoting Johnson, 434 F.3d at 654 (internal citation omitted)). The rule, however, does not mandate that the opinion be given controlling weight. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). "It is error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." Social Security Ruling (SSR) 96-2p, 61 Fed. Reg. 34490-01, 34491. See also 20 C.F.R. § 404.1527. Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). See also Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence."). Under section 404.1527, if an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he or she must then consider the weight to be given to the physician's opinion by applying five factors identified in the regulation: (1) the length of the treatment relationship and the frequency of the examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527(d)(2)(i)-(ii), and (d)(3)-(5). Further, although a treating physician may offer an opinion as to a claimant's RFC, the final responsibility for deciding this issue is reserved to the Commissioner, and no special significance will be given to the source of such opinion. 20 C.F.R. § 404.1527(e)(2),(3).

The ALJ addressed the report of Dr. Boyd as follows:

> The longitudinal medical evidence does not support the claimant's allegations of disability as alleged. Dr. Boyd, of Piedmont Orthopedic, treated the claimant from November 2004 through February 2005. The claimant presented with complaints of pain all over but especially in both knees and the left shoulder. A physical examination revealed full range of motion of the shoulder without tightness. She was tender generally, without specificity. She had no sensory or motor loss in the arm and no adenopathy. Dr. Boyd diagnosed the claimant with bitter complaints of pain, no objective evidence of disease. A magnetic reasoning imaging (MRI) of the bilateral knees and shoulder showed subtle degenerative changes from age only studies, but no specific tears were demonstrated. The claimant was treated with physical therapy. In a progress note dated February 22, 2005, Dr. Boyd opined the claimant would be permanently unable to do climbing, working on her knees, or lifting more than 20 pounds.

(Tr. 69-70).

The ALJ did not note that Dr. Boyd also opined in May 2005 that claimant "continues to have difficulties with both knees trying to work" and reiterated that her restrictions were permanent. (Tr. 287). Further, the ALJ did not set forth his reasoning for completely ignoring the opinion of Dr. Boyd who was the treating orthopedist since her injuries at work in 2004. Instead, the ALJ gave all weight to the State Agency non-examining physicians' opinions who found that plaintiff was capable of performing a significant range of light work activity. Dr. Boyd was the treating orthopaedist, his opinion was based on objective medical findings including MRIs, and his opinion was supported by the opinion of examining orthopaedist Dr. Seastrunk as discussed below. (Tr. 366-367).

Dr. Seastrunk of Palmetto Orthopaedic, a nontreating examiner, conducted an independent examination on April 4, 2006, after reviewing all her past medical history, evaluations, MRIs, and ordering his own X-rays for review. Dr. Seastrunk stated that his physical examination revealed the claimant walked with an antalgic gait involving the left lower extremity. (Tr. 301). Dr. Seastrunk also notes plaintiff had marked crepitation on flexion and extension of both knees which she was able

7

to do actively and she was especially tender over the medial aspect, fluid in both knees, and with the main areas of tenderness involving both knees along the medial joint line. (Tr. 301). Dr. Seastrunk noted that X-rays showed marked narrowing involving the medical joint of both knees, and X-rays of the claimant's left shoulder showed cystic change throughout the humeral head and what appeared to some narrowing of the glenohumeral joint. (Id.). Dr. Seastrunk diagnosed plaintiff with osteoarthritis involving both knees and a partial tear anterior aspect of the distal tendon of the supraspinatus muscle as a result of the accident occurring on October 11, 2004. Dr. Seastrunk opined that plaintiff had marked restriction in the range of motion to the left shoulder and that she had a 16% whole person impairment. He further opined that plaintiff "should not stand no more than one hour during an 8 hour period or walk any more than one hour during an 8 hour period. Also no squatting, no bending, kneeling on a permanent basis." (Tr. 302). He further stated plaintiff should not climb ladders and should have limited stair walking and walking up and down inclines and "should do absolutely no overhead work above shoulder level with a maximum lifting involving the left upper extremity of 10 lbs." (Id.). Dr. Seastrunk stated that there is a probability of future surgeries to both knees and left shoulder. As to Dr. Seastrunk's examination and evaluation, the ALJ stated the following:

> I have considered and give little weight to the opinion of Dr. Seastrunk, as a nontreating examiner. Opinions of nontreating physicians are evaluated with particular attention as to: consistency with other evidence, the qualifications of the source, and the degree to which the source offer explanations for their opinions. I noted that the opinion of Dr. Seastrunk was not supported by diagnostic and clinical findings and inconsistent with the record when considered in its entirety.

The above summarization shows the ALJ's reasoning is flawed. Contrary to the ALJ's explanation, Dr. Seastrunk's opinion was supported by diagnostic and clinic findings. Dr. Seastrunk based his opinion on the results of X-rays of plaintiff's knees and left shoulder, as well as his physical

examination and review of other medical records and MRI. Additionally, Dr. Seastrunk is an orthopaedic specialist, he gave explanation for his opinions, and his opinion is consistent with the opinion of the treating Orthopaedic, Dr. Boyd.

Plaintiff also argues the ALJ erred in not giving controlling weight to the opinion of Dr. Carol A. Kooistra of Carolina Neurology. Dr. Kooistra, a neurologist, conducted and evaluated plaintiff with regard to the pain, tingling numbness of all fingers and a popping or triggering to her right middle finger. (Tr. 326-327). Dr. Kooistra noted that plaintiff spent twenty-five years in manufacturing, twelve years at her previous job involving the repetitive use of screw guns. (Tr. 326). After an examination, Dr. Kooistra diagnosed bilateral carpal tunnel syndrome, right greater than left with both motor and sensory findings on exam, and trigger finger right middle finger associated with loss of range of motion. (Tr. 327). She recommended additional treatment and advised that surgery should be performed.[1] Dr. Kooistra also assessed plaintiff at a 40% impairment of her right middle finger secondary to the triggering and a 25% impairment of the right upper extremity and 10% impairment of the left lower extremity as a result of her bilateral carpal tunnel syndromes for purposes of workers compensation. Even though Dr. Kooistra did not provide specific functional limitations, her findings based on the examination gave credence to plaintiff's claims of pain and limitation of function. The ALJ concluded as follows with regard to Dr. Kooistra's findings:

> I have considered and give little weight to the opinion of Dr. Kooistra, as a nontreating examiner. Opinions of nontreating physicians are evaluated with particular attention as to: consistency with other evidence, the qualifications of the

---

[1] Workers compensation approved surgery on plaintiff's right hand. Dr. Essman performed the surgery on May 9, 2007. Even though she underwent physical therapy and obtained full range of motion of her hand, Dr. Essman noted that plaintiff continued to complain of numbness, stiffness and pain. Dr. Essman stated that she was at maximum medical improvement with a 7% permanent impairment to her right hand on October 3, 2007, as there was nothing else he could do.

source, and the degree to which the source offer explanations for their opinions. I note that the opinion of Dr. Kooistra was inconsistent with the evidence of record when considered in its entirely, even though he only examined the claimant one time. I find that the opinion of Dr. Koositra was not supported by diagnostic and clinical findings and inconsistent with the record when considered in its entirely.

(Tr. 71).

The ALJ used the same verbiage as he did in rejecting the opinion of Dr. Seastrunk. However, once again, Dr. Kooistra is a specialist in her field of neurology, she evaluated and examined plaintiff, she cited her reasons for her opinion, and her opinion was not inconsistent with other medical findings. Therefore, the ALJ did not conduct a proper analysis of this physician's opinion and findings.

Lastly, plaintiff argues the ALJ erred in failing to give proper weight to the opinion of Dr. C. David Tollison, clinical psychologist, who conducted a medical evaluation for depression in December 2006. He administered the MMPI [Minnesota Multiphasic Personality Inventory] to plaintiff with "statistically valid results" and found no suggestion of test manipulation, magnification, embellishment, or denial of her current and true level of psychological functioning. (Tr. 401). The result of the MMPI revealed plaintiff as experiencing moderate intensity of both depressive and anxiety features, tied to pain intensity, duration, and lifestyle alterations. Dr. Tollison stated that it appeared her physical problems "likely occupy much of her thought and attention and she may have difficulty maintaining focus and attention over time due to distraction. Associated with her anxiety are likely to be feelings of frustration, dissatisfaction, worry, apprehension, tension, stress, nervousness, worry, rumination, and cognitive internal turmoil." (Tr. 401). Dr. Tollison further opined that associated with plaintiff's depression are "likely to be feelings of sadness, discouragement, control, limitation, helplessness, inadequacy, loss, and lack of normal optimism

regarding the future." (Id.). Dr. Tollison's psychological diagnoses was an adjustment disorder with depressive and anxiety features, a somatoform disorder and assigned a GAF of 60-65, with moderate impairment in concentration, persistence and pace and in adaptation to stressful conditions (Tr. 401-402). Dr. Tollison opined as follows:

> Based upon my evaluation of the patient, review of medical records, and results of objective psychological testing, it is my opinion Ms. Furguson suffers a Class 2 (mild) psychological impairment in activities of daily living, a Class 2 impairment in social functioning, a Class 3 (moderate) psychological impairment in concentration /persistence/pace, and a Class 3 impairment in adaptation to stressful conditions. . . It is further my opinion that her psychological diagnoses and impairments, as outline herein, are casually related to her work injury of October 2004. . .

(Tr. 402).

However, the ALJ did not mention this opinion or evaluation in the decision. Defendants assert that by the ALJ limiting her work to "simple instructions" he covered any limitations due to depression. However, the ALJ failed to provide an explanation with regard to functional limitations as a result of depression and anxiety. Therefore, the ALJ did not conduct a proper analysis. It is not for this court to speculate as to what the ALJ by "simple instructions" and if he considered Dr. Tollison's report.

The ALJ's failure to provide proper reasons for dismissing the opinions of the treating orthopaedist, and the opinions of Drs. Seastrunk, Dr. Looistra, and Dr. Tollison who are all specialists in their field, stating the testing and objective evidence that they relied in reaching their decision was not inconsistent with other treating or evaluating physicians.

The ALJ's decision does not properly assess the opinions of plaintiff's treating and examining physicians with regard to plaintiff's limitations as discussed above. Therefore, as a result of the ALJ's improper analysis and inadequate explanation of his assessment of the opinions of the treating and examining physicians, it is not possible for the Court to conduct a proper review of the record to

determine if there was substantial evidence to support the ALJ's decision. Therefore, it is recommended that this case be remanded for the ALJ to reconsider the opinions of Drs. Boyd, Seastrunk, Kooistra, and Tollison in accordance with 20 C.F.R. §§ 404.1527(d)(2) (i-ii) and (d)(3)-(5) and Ruling 96-2. The undersigned cannot address the remaining issues until the ALJ conducts a proper analysis of the treating and examining physicians' opinions with regard to plaintiff's physical and mental limitations. Once the ALJ conducts a proper analysis, he should reassess plaintiff's credibility and Residual Functional Capacity for a proper review.

"New" Evidence

Plaintiff argues the Appeals Council erred by not properly evaluating the report submitted by Dr. Margalit, and the basis for his opinions of the claimant's functional capacity. After the unfavorable decision, plaintiff provided a new medical evaluation from Dr. Gal Margalit performed on August 4, 2009, approximately five months after the hearing decision. Dr. Margalit's evaluation was the first full evaluation since the 2006 evaluation by Drs. Seastrunk, Kooistra, and Tollison. Dr. Margalit performed a detailed physical examination, reviewed all of the medical records back to 2004, provided deposition testimony explaining why degenerative joint disease of the knees and obesity in combination cause so much pain and dysfunction, and why post-surgical carpal tunnel syndrome affects the ability to repetitively grip and handle. After giving a detailed opinion as to plaintiff's ability to work, Dr. Margalit stated that in his opinion "this patient is disabled from any form of gainful employment secondary to her combination of serious medical problems that are chronic in nature and will likely worsen. She has probably been disabled since she last worked on 3/31/06." (Tr. 29). The Appeals Council admitted this evidence into the record. But in deciding not

to review the ALJ's decision, the Appeals Council found only that "this information does not provide a basis for changing the Administrative Law Judge's decision." (Tr. 2). Plaintiff contends that this failure to elaborate constitutes reversible error.

Defendant argues that the Appeals Council did not err by not articulating its reasoning for concluding that the additional evidence provided no basis for changing the ALJ's decision. Nevertheless, the undersigned is persuaded by the opinion of Judge David Norton, now serving as this district's Chief Judge, in Harmon v. Apfel, 103 F. Supp. 2d 869 (D.S.C. 2000):

> In [Barden v. Apfel, No. 5:98-2637-18BD, slip op. (D.S.C. Oct. 4, 1999), and Sumpter v. Apfel, No. 5:97-2806-18JI, slip op. (D.S.C. Sept. 28, 1999)], this court relied on published decisions of the Fourth Circuit in determining that the Appeals Council must articulate its reasons for rejecting new, additional evidence, so that a reviewing court may understand the weight the Commissioner attributed to the new evidence. In Social Security cases, a district court's function "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." "A bald conclusion, unsupported by reasoning or evidence, is generally of no use to a reviewing court." Instead, the Commissioner "must indicate explicitly that all relevant evidence has been weighed and its weight." The "Appeals Council's failure to make specific findings concerning [new evidence submitted to it is] reversible error. Unless the [Commissioner] explicitly indicates the weight given to all the relevant evidence, [a district court] cannot determine on review whether the findings are supported by substantial evidence." Therefore, the Commissioner "must present [the reviewing court] with findings and determinations sufficiently articulated to permit meaningful judicial review." The Commissioner failed to do so in this case. This court is not a soothsayer and cannot base its conclusion on surmise and conjecture as to the reasons the Commissioner disregarded the new, additional evidence presented to it. "Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."

Id. at 873 (footnotes and citations omitted). See also Suber v. Comm'r of Soc. Sec. Admin., 640 F. Supp. 2d 684, 688 (D.S.C. 2009) (agreeing that "the Harmon reasoning represents the most sound

13

resolution of the Fourth Circuit's conflicting authorities").  Nevertheless, as the undersigned already sees the need for the ALJ to address other issues, upon remand, the ALJ can also subject Dr. Maragit's deposition and report to a proper physician evaluation.  Cf. King v. Barnhart, 415 F. Supp. 2d 607, 611 (E.D.N.C. 2005) ("If, for example, the new evidence contains an opinion of a treating physician that claimant was disabled, that opinion not having been addressed or contradicted by other evidence in the record, the great weight accorded to such an opinion would require remand.").

### IV.  CONCLUSION

Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under Section 205(g), sentence four, it is,

RECOMMENDED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further administrative action as set out above to determine if plaintiff is entitled to benefits.

Respectfully submitted,

s/Thomas E. Rogers, III

Florence, South Carolina  
November 22, 2010

Thomas E. Rogers, III  
United States Magistrate Judge